UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLES S. LONGSHORE,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT HERZOG, et al.,<br><br>    Defendants. | No. 4:17-CV-05003-SAB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 111. The motion was heard without oral argument. Defendants request that summary judgment be entered in their favor and that Plaintiff's claims be dismissed with prejudice. Plaintiff objects and requests that the Court deny the motion and allow his case to proceed to trial. ECF No. 213. Pursuant to the Order issued on May 11, 2017, the Court will consider Defendants' motion only on the issue of qualified immunity.[1] ECF No. 182. Having reviewed the pleadings and the file in this matter, the Court is fully informed and grants Defendants' motion on the issue of qualified immunity.

## FACTS

Mr. Longshore was an inmate at the Washington State Penitentiary ("WSP"). WSP has special housing units for inmates who are in protective custody

---

[1] In the interest of fairness and justice, the Court is not willing to allow the summary disposal of Plaintiff's claims before Plaintiff has had a full opportunity to request discovery on the issues.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 1**

for mental health or other reasons. ECF No. 115 at 2. On January 10, 2015, Mr. Longshore wrote a letter to WSP Superintendent Donald Holbrook requesting he be transferred to those special housing units known as the "BAR Units." ECF No. 115, Exhibit 1. Mr. Longshore promised to "not cause problems" in the BAR Units, and Superintendent Holbrook responded by granting his request. *Id*.

On July 1, 2015, Mr. Longshore received an infraction stemming from an assault on a WSP staff member. As a result of Mr. Longshore's behavior, coupled with the fragile nature of the inmate population in the BAR Units, WSP staff believed transferring Mr. Longshore back to the BAR Units was not appropriate. ECF No. 115, Exhibit 2. Instead, Mr. Longshore remained in the Intensive Management Unit ("IMU"). The parties agree that Mr. Longshore has been in WSP IMU custody from approximately July 1, 2015 to December 14, 2016, when he was transferred to the IMU at Stafford Creek Corrections Center.

According to Defendants, Mr. Longshore's continued placement at the IMU was based on lack of viable placement alternatives,[2] Mr. Longshore's behavior at the IMU,[3] his criminal history,[4] his past prison behavior,[5] and the concern for his personal safety.[6] Mr. Longshore, on the other hand, claims that his continued placement at the IMU violates his federal civil rights pursuant to the Eighth and Fourteenth Amendments.

On May 3, 2017, Defendants filed a Motion to Stay Discovery Pending Resolution of Defendants' Motion for Summary Judgment. ECF No. 171. The Court granted this motion, ordering a stay pending the Court's consideration of

---

[2] ECF No. 112 ¶ 8-12.
[3] ECF No. 112 ¶13-19.
[4] Mr. Longshore is currently serving a life sentence for two counts of aggravated first degree murder. However, his murder convictions were recently reversed by the Washington State Court of Appeals and the case was remanded to the Mason County Superior Court for further proceedings. *See State v. Longshore*, No 47030-6-II, 2016 WL 7403795 (Wash. Ct. App. Dec. 21, 2016).
[5] ECF No. 112 ¶ 3-7.
[6] ECF No. 112 ¶ 8.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 2**

Defendants' motion for summary judgment only on the issue of qualified immunity. ECF No. 182.

**STANDARD**

Summary judgment is appropriate if the record established "no genuine dispute as to any material fact and the movant is entitle to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must point to specific facts establishing a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the non-moving party fails to show a genuine dispute of material fact as to the elements essential to its case for which it bears the burden of proof, such that the moving party is entitled to judgment as a matter of law, the trial court must grant the summary judgment motion. *Celotex Corp.*, 477 U.S. at 322.

**DISCUSSION**

The doctrine of qualified immunity shields government officials from civil liability under Section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has set forth a two-part analysis for resolving qualified immunity claims. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court must determine (1) whether Plaintiff has shown a violation of a constitutional right; and (2) whether that right was clearly established at the time of the incident. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Phillips v. Hust*, 588 F.3d 652, 657 (9th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "[I]f the defendants' conduct is so patently

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 3**

violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Mendoza v. Block*, 27 F.3d 1357, 1367 (9th Cir. 1994). Although the officer's subjective intent is irrelevant, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), the information actually possessed by the officer is relevant to this determination. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

**Eighth Amendment Claim**

The Constitution "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To prove a claim under 42 U.S.C. § 1983 and the Eighth Amendment, Plaintiff must establish two things. First, he must show that the alleged deprivation is "sufficiently serious"; meaning that the "prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347)). And second, he must show the prison official acted with deliberate indifference; meaning that the official knew of and disregarded an excessive risk to inmate health or safety. *Id.* at 837.

In the context of a claim under the Eighth Amendment for failure to provide adequate medical care, Plaintiff must show a deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 91, 104 (1976). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wonton infliction of pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). In order to establish deliberate

indifference, there must first be a purposeful act or failure to act on the part of the defendant. *Id*. at 1060.

Mr. Longshore has failed to show a constitutional violation because he has not demonstrated any deliberate indifference attributable to Defendants. Mr. Longshore's Eighth Amendment claim is two-fold: (1) he has received inadequate mental health care; and (2) he is subject to conditions of confinement that deny him "the minimal civilized measure of life's necessities." ECF No. 231 at 13-14. With respect to the first issue, Mr. Longshore claims "it is my belief that the Department has the staff and facilities to treat what the Department has diagnosed as my serious mental conditions." ECF No. 203 at 5. However, Mr. Longshore does not provide evidence as to how the mental health care he is currently receiving is inadequate. In fact, the record demonstrates that he has received significant mental health care by numerous professionals. ECF Nos. 116, 45.

Even if Mr. Longshore's mental health care is inadequate, his claim fails because he has not provided any evidence that Defendants acted with deliberate indifference to his serious medical needs. His claim with respect to the conditions of his confinement fails for the same reason. Plaintiff's expert, Harvey Cox, provided an affidavit wherein he claims that Defendants "demonstrated a deliberate indifference to the mental health of Mr. Longshore by assigning him to isolation in a non-mental health treatment unit." ECF No. 203, Exhibit E. However, there are two issues with this assertion. First, it is vague and conclusory; it does not provide any facts to support a finding of deliberate indifference. *See Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1132 (W.D. Wash. 2007) ("In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute."). Second, assigning an inmate to segregated housing does not, in itself, constitute deliberate indifference; this requires a greater showing. *See Toussaint v. Yockey*, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984) ("Even

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 5**

an indeterminate sentence to punitive isolation does not without more constitute cruel and unusual punishment.").

In fact, the record shows concrete reasons behind Defendants' decision to keep Mr. Longshore in the IMU. In his time at the IMU, Mr. Longshore received four[7] status review hearings. ECF No. 115 at 4. The basis for Mr. Longshore's continued placement in the IMU includes his past prison behavior; limited placement options within Department of Corrections facilities; and behavior raising serious concerns with his mental health. ECF No. 112.

A critical component to Defendants' decision to keep Mr. Longshore at the IMU is the concern for his personal safety. Mr. Longshore is the target of the Native American prison "Blood" gang. ECF No. 113 at 2-3. The prison gang wants to kill Mr. Longshore; a threat that Mr. Longshore himself cited in support of his continued placement in the IMU. ECF No. 113, Exhibit 1. In fact, releasing Mr. Longshore in light of this serious threat may have resulted in a violation of his Eighth Amendment right to prison safety. *See Farmer*, 511 U.S. at 837 (to demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that the official knew of and disregarded an excessive risk to inmate safety).

Because Plaintiff has failed to show a violation of a constitutional right, *see Pearson*, 555 U.S. at 232, the Court finds Defendants are entitled to qualified immunity from Mr. Longshore's Eighth Amendment claim.

**Fourteenth Amendment Claim**

To state a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment, Plaintiff must establish that he suffered (1) deprivation of a liberty interest, and (2) due process was not provided. *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). In the context of administrative segregation, a federal liberty

---

[7] The outcome of the first three was to retain him in the WSP IMU; the outcome of the fourth was to transfer him to the Stafford Creek Corrections Center IMU. ECF No. 115 at 4.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 6**

interest exists only if the administrative segregation was an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

To determine whether the prison official's action constituted an "atypical and significant hardship on the inmate," courts consider the conditions of segregation and its duration. *Sandin*, 515 U.S. at 494; *see also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). The Second Circuit has determined that when placement in segregated housing is longer than 305 days, the placement constitutes "a sufficient departure from the ordinary incidents of prison life," so as to trigger procedural due process protections under *Sandin*. *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004). The Ninth Circuit has also held that a Fourteenth Amendment liberty interest may be created when inmates are deprived of periodic, meaningful reviews of whether continued segregation is appropriate because such a deprivation makes segregation atypical. *Brown v. Oregon Dept. of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014).

The Supreme Court has indicated that, when there is a liberty interest sufficient to implicate the Due Process Clause, "some sort of periodic review" of confinement in segregated housing is necessary to satisfy due process. *Hewitt v. Helms*, 459 U.S. 460, 477 n.9, rejected on other grounds by *Sandin*, 515 U.S. 472; *see also Wilkinson v. Austin*, 545 U.S. 209 (2005) (upholding Ohio's system for placing inmates in high security restrictive facilities, which includes annual reviews of inmate status). The Court has noted that this periodic review does not necessarily require new evidence of statements, and continued placement in segregated housing may be based on "facts relating to a particular prisoner" and "the officials' general knowledge of prison conditions and tensions." *Id*. The Ninth Circuit has further explained, however, that a prisoner's due process rights will not be satisfied by "meaningless gestures." *Toussaint v. McCarthy*, 801 F.2d 1080, 1102 (9th Cir. 1986), abrogated on other grounds by *Sandin*, 515 U.S. 472.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 7**

In this case, the Court finds that Mr. Longshore's continued placement in the IMU for over two years constitutes an "atypical and significant hardship on the inmate," and, therefore, implicates a liberty interest under the Fourteenth Amendment. *Sandin*, 515 U.S. at 494. The basis of Mr. Longshore's claim is that he has been "subjected to a prolonged practice of formulaic periodic custody reviews in violation of the Fourteenth Amendment." ECF No. 213 at 7-8. In other words, Mr. Longshore believes his IMU status reviews have not been meaningful. ECF No. 203 at 5. In support of this contention, Mr. Longshore points to a letter sent by Defendant Herzog on September 30, 2015 ("Herzog Letter"). ECF No. 203, Exhibit A. According to Mr. Longshore, this letter constitutes "an admission of a programmatic intent to keep Mr. Longshore confined in administrative segregation." ECF No. 213 at 3.

Defendants respond by claiming that Mr. Longshore has received at least four status reviews, ECF No. 115 at 4, all of which have been meaningful despite resulting in his continued placement at the IMU. Moreover, Defendants' assert that the Herzog Letter demonstrates Mr. Longshore's continued placement at the IMU is the result of multiple factors, including: Mr. Longshore's July 2015 infractions; the fragile offender population in the BAR Units; and Mr. Longshore's limited placement options due to threats to his life. ECF No. 203, Exhibit A.

Although there is an issue of fact as to whether Mr. Longshore received "meaningful" periodic reviews, the Court finds that this issue of fact is not material. To survive Defendants' motion for summary judgment, Plaintiff must show that the constitutional violation alleged was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232. The adequacy of a segregated status review, *i.e.*, what constitutes a "meaningful" review, has not been clearly established. Therefore, the Court need not determine whether a constitutional violation occurred because the basis of Mr. Longshore's claim has not been clearly

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 8**

established. The Court finds Defendants are entitled to qualified immunity from Mr. Longshore's Fourteenth Amendment claim.

## CONCLUSION

For the reasons set forth above, the Court finds Defendants are entitled to qualified immunity as to Plaintiff's Eighth and Fourteenth Amendment claims.

After this motion for summary judgment was filed, Plaintiff attempted to schedule the deposition of several witnesses but Defendants objected on the grounds that the Court had previously stayed discovery pending resolution of the qualified immunity issue. ECF No. 182. Plaintiff then filed a Motion for Sanctions, ECF No. 180, which is now moot.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, ECF No. 111, is **GRANTED in part and DENIED in part**. Defendants are immune from Plaintiff's Eighth and Fourteenth Amendment Claims.
2. Plaintiff's claims under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments are **DISMISSED WITH PREJUDICE**.
3. Plaintiff's Motion for Sanctions, ECF No. 180, is **DENIED** as moot.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 27th day of September 2017.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ^ 9**